THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARY DOE, on Behalf of Her Three Children, Appellant, v JOHN BEAUDOIN, as Commissioner of Social Services of the County of Rensselaer, Respondent. (Proceeding No. 1.)
In the Matter of CHARLES J. WILCOX, as Rensselaer County District Attorney, Petitioner, v LAWRENCE E. KAHN, as Justice of the Supreme Court, Respondent. (Proceeding No. 2.)

Third Department, June 21, 1984

APPEARANCES OF COUNSEL ·

*David R. Singiser* for appellant.

*Kenneth Gordon Orvis* for John Beaudoin, respondent.

*Charles J. Wilcox* (*Howard D. Lewis* of counsel), petitioner *pro se.*

*Robert Abrams, Attorney-General* (*Carl E. Stephan* of counsel), for Lawrence E. Kahn, respondent.

### OPINION OF THE COURT

WEISS, J.

In proceeding No. 1, the mother of three daughters, ages eight years, four years and 19 months, respectively, seeks to overturn an amended judgment of the Supreme Court which dismissed her petition for a writ of habeas corpus seeking return of custody of the three children. She also seeks to overturn that portion of the amended judgment which directs that the evidence in the child protective proceeding, which is pending in Rensselaer County Family Court, be submitted to the Rensselaer County Grand Jury. Finally, the mother seeks reversal of so much of the amended judgment as unsealed said decision after deletion of her and her children's names.

On November 22, 1983, the youngest child was brought to the Albany Medical Center Hospital in critical condition. Seven different physicians who examined and/or treated the infant all found the parents' explanations of an accident at the babysitter's home to be inconsistent, unreasonable, inadequate or mismatched, and four doctors found a distinct possibility of either sexual abuse or child abuse. On December 9, 1983, a petition was filed in Family Court by the Rensselaer County Department of Social Services seeking an order determining all three minors to be either abused or neglected children. On December 20, 1983, the return date, an oral stipulation between counsel for the parents and the Department of Social Services was made

providing that the two older children live with their maternal grandparents pending further investigation. A Law Guardian was appointed. On February 14, 1984, the case was adjourned to March 30, 1984 for trial and the temporary custody arrangement created by the December 20, 1983 stipulation was continued over the parents' objections.

On February 21, 1984, the mother petitioned for a writ of habeas corpus against the Rensselaer County Commissioner of Social Services, alleging that her three children were being illegally detained pursuant to an order of the Family Court Judge, and therefore sought their return. The writ was returnable before Justice Lawrence E. Kahn who, following a hearing conducted on February 22, 1984, made an order dismissing the writ and referring the matter to the Family Court for further proceedings in the child protective proceeding; directing the County Department of Social Services to make its file available to the District Attorney to assist in further investigation of the alleged child abuse; and, ordering that the writ and papers be sealed. Subsequently, on February 28, 1984, another hearing was conducted by Justice Kahn at his instance at which, in addition to counsel for the parties, the Rensselaer County District Attorney was represented. An "amended judgment-order" was signed in which the same decretal provisions dismissing the writ, referring the matter to the Family Court for child protective proceedings, and directing the Department of Social Services to give the District Attorney a copy of its entire file in the case, were repeated. However, the court added a decretal clause ordering that the "evidence in this proceeding be submitted to the Rensselaer County Grand Jury for their consideration". Finally, the order continued the provision that the writ and supporting and opposing papers remain sealed, but directed that the "amended judgment-order and the accompanying decision with names of the children and their parents deleted therefrom are not sealed".

The petitioning mother has appealed from the amended judgment and, by order to show cause dated February 29, 1984, applied for, and was granted, an order staying so much of the amended judgment as directed the evidence in

the proceeding be submitted to the Rensselaer County Grand Jury pending her appeal. On March 15, 1984, the Rensselaer County District Attorney initiated proceeding No. 2, a CPLR article 78 proceeding in this court, petitioning for a writ of prohibition vacating so much of the amended judgment as required that the evidence in the matter be presented to the Rensselaer County Grand Jury.

■ Initially, we note that the writ of habeas corpus was procedurally defective for several reasons. First, it does not appear from the petition that the named respondent, the Rensselaer County Commissioner of Social Services, had custody of, or was illegally detaining, said children. As such, he was not a proper party to the proceeding (CPLR 7002, subd [c], par 1; 7004, subd [b]). From this record, it appears that temporary custody of the children, including the hospitalized child, was placed with the maternal grandparents pursuant to the December 20, 1983 oral stipulation between the parties, which was made in Family Court and approved by the Family Court Judge. The writ therefore should have been directed against the custodian grandparents. Nor was the Family Court Judge, who continued temporary custody by order of February 14, 1984, given notice of the writ as required by CPLR 7009 (subd [a], par 2).* These procedural defects precluded Special Term from considering the merits of the habeas corpus proceeding. We therefore affirm so much of the amended judgment as dismissed the writ of habeas corpus.

Were we to reach the merits, however, we agree, based on a review of the entire record, that Special Term correctly dismissed the writ and continued temporary custody with the grandparents, pending completion of the scheduled fact-finding hearing in Family Court. Faced with the medical reports of seven physicians, which demonstrated the severity of the injuries and disbelief of the parents' explanations of the causes, it was not unreasonable for Special Term to continue temporary custody and to order a

* The record does not include an actual written order continuing custody on February 14, 1984, nor has a written copy of the December 20, 1983 stipulation been provided. Absent a written order continuing custody, it may very well be that the challenged custody arrangement simply emanated from the December 20, 1983 stipulation. If this were the case, the mother would be deemed to have voluntarily acceded to custody with the grandparents, and would therefore still lack any basis whatsoever to support her petition for a writ of habeas corpus.

further investigation in Family Court. This was especially appropriate since a neurologist reported that the head injury was only hours old at the time of his examination, rather than weeks old as claimed by the parties. It was by far the safer course to follow (see, e.g., *Matter of Corey T.,* 81 AD2d 785, 786). Furthermore, since proof of neglect or abuse to one child can justify the removal of the other children (*Matter of Katherine J.,* 71 Misc 2d 47; *Matter of Edwards,* 70 Misc 2d 858), it was proper to continue temporary custody of the older two children.

We also find no error in that part of Special Term's amended judgment which, after deletion of the names of the children and parents, directed that said judgment and decision not be sealed. Although it would appear that this issue should be dismissed as moot, we believe it would be appropriate to apply the exception to the mootness doctrine (*Matter of Hearst Corp. v Clyne,* 50 NY2d 707, 714-715). We recognize the traditional confidentiality applied to Family Court proceedings (Family Ct Act, § 166; Social Services Law, §§ 372, 422; 22 NYCRR 2501.3[c]). However, a Supreme Court Justice is vested with inherent plenary power (NY Const, art VI, § 7) to fashion any remedy necessary for the proper administration of justice (see *Jones v Palermo,* 105 Misc 2d 405; *People v Cirillo,* 100 Misc 2d 527). Having provided for anonymity by deletion of the parties' names, the order was neither illegal nor beyond the scope of his authority.

■ In proceeding No. 2, we are asked to address the question of whether Justice Kahn, in his amended judgment of February 28, 1984, acted in excess of his jurisdictional authority in directing that "all of said evidence in this proceeding be submitted to the Rensselaer County Grand Jury for their consideration." The Rensselaer County District Attorney seeks a writ of prohibition to expunge this part of the amended judgment, contending that the presentation of a criminal matter to the Grand Jury rests solely within the discretion of the District Attorney (see *People v Di Falco,* 44 NY2d 482). Justice Kahn urges that the amended judgment does not, by its terms, specifically direct the District Attorney to take any action. Instead, Justice Kahn contends that the Grand Jury has

inherent investigatory powers to review the matter independently, without the District Attorney's involvement. As we have already found, the writ of habeas corpus was procedurally defective, thereby rendering the District Attorney's argument in proceeding No. 2 academic. However, were we to reach the merits in this proceeding, we conclude that Justice Kahn, notwithstanding his laudatory concern for the welfare of the infants, acted outside of his authority in ordering the presentation of evidence to the Rensselaer County Grand Jury.

The issue distills to whether the Grand Jury has such inherent investigatory powers and whether it may act independent of the District Attorney. We think not. It is well settled that the Grand Jury in this State derives its authority solely from the Constitution and statute (NY Const, art I, § 6; CPL art 190; see *Matter of Wood v Hughes,* 9 NY2d 144, 149). The comprehensiveness of the present legislative scheme regulating the functions of the Grand Jury (CPL art 190) confirms a legislative intent to preempt the common law (see *Matter of Wood v Hughes, supra,* pp 149-150). A review of the cases relied upon by Justice Kahn to establish an independent investigative authority in the Grand Jury reveals that those cases were decided under section 252 of the former Code of Criminal Procedure which did, indeed, authorize the Grand Jury to initiate investigations of crimes (see, e.g., *People ex rel. Van Der Beek v McCloskey,* 18 AD2d 205, 208; *Matter of Prentice v Gulotta,* 13 Misc 2d 280, 282). This section was declaratory of the common law (*Matter of Manning v Valente,* 272 App Div 358, 362-363, affd 297 NY 681). Section 252 of the former Code of Criminal Procedure, however, was not continued in the present day Criminal Procedure Law, which became effective on September 1, 1971 (L 1970, ch 996). In view of the numerous significant changes of substance reflected in the Criminal Procedure Law, we deem the legislative omission to be purposeful (see McKinney's Cons Laws of NY, Book 1, Statutes, §§ 73, 74, 422, 423). As a result, Justice Kahn presently lacks any statutory authority to support his position.

We recognize that CPL 190.85 does authorize the Grand Jury to prepare reports, but such reports are limited to the

"misconduct, non-feasance or neglect in public office by a public servant", clearly not relevant here. The only other result of a Grand Jury investigation, if not dismissed or removed to Family Court, is an indictment made at the instance of a public prosecutor (see CPL 190.60). Subdivision 1 of section 700 of the County Law specifically charges the District Attorney with the duty of conducting all criminal proceedings within his jurisdiction. In essence, the Grand Jury no longer enjoys an independent power to investigate criminal matters. Therefore, the challenged judgment, while not expressly requiring the District Attorney to present this evidence to the Grand Jury, does so by implication.

The question remains whether Justice Kahn had the authority to direct such a presentation. Again, we think not. It is well established that the District Attorney enjoys broad discretion over who, what and when to prosecute (*People v Di Falco, supra,* p 486; *People v Muka,* 72 AD2d 649, 650; *People v Putland,* 102 Misc 2d 517, 523). The responsibilities attendant the position of this duly elected official necessitate "the exercise of completely impartial judgment and discretion" (*People v Di Falco, supra,* p 487). Indeed, respect for the basic separation of powers lodged in the executive, legislative and judicial branches of our government compels this court not to interfere with the prosecutor's authority (*Matter of Hassan v Magistrates' Ct.,* 20 Misc 2d 509, app dsmd 10 AD2d 908, mot for lv to app dsmd 8 NY2d 750, cert den 364 US 844). Accordingly, we conclude that Justice Kahn proceeded in excess of his authority in directing a presentation of evidence to the Rensselaer County Grand Jury.

In proceeding No. 1, the amended judgment should be modified by deleting so much thereof as ordered the submission of certain evidence to the Rensselaer County Grand Jury.

In proceeding No. 2, the petition should be granted by the modification of the amended judgment as previously ordered.

MAHONEY, P. J., MAIN, LEVINE and HARVEY, JJ., concur.

In proceeding No. 1, amended judgment modified, on the law, without costs, by deleting so much thereof as ordered

the submission of certain evidence to the Rensselaer County Grand Jury, and, as so modified, affirmed.

In proceeding No. 2, petition granted, without costs, by deleting that portion of the amended judgment which ordered the submission of certain evidence to the Rensselaer County Grand Jury.